Weygandt, C. J.
The assessment is for the latter part of 1955, all of 1956 and part of 1957 on the use and sale of certain machine tools and equipment bought and used by the appellant for the building, maintaining and repairing of dies, fixtures and other parts of metal working presses. The function of these presses is to stamp automobile body panels.
The single question here presented is whether, under the provisions of Sections 5739.01 and 5741:01, Revised Code, 4‘the *362 purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, or mining * * (Italics supplied.)
The controlling facts are not in dispute, and most of them are stipulated. None of this personal property was utilized in the actual production of body stampings. None of the dies and fixtures produced by the use of this property was produced for sale. None of this property was used as much as 50 per cent of the time solely in the repair and maintenance of dies, fixtures and presses. In its opinion the Board of Tax Appeals summarized the facts as follows:
“These newly fabricated dies and fixtures do not have the character of repairs or maintenance tools. When they are installed in the presses after their fabrication they have their designated work to do in the fabrication of automobile body parts or panels out of sheet metal. The fixtures, so-called, are, apparently, devices for holding the sheet metal in place while the dies activated by power transmitted to it by other parts in the presses give form to the automobile body parts or panels and stamp the same out of the sheet metal. While these dies and fixtures may need repair and maintenance from time to time, they are not in and of themselves repairs or maintenance tools of the presses or of any other parts therein. Moreover, the dies and fixtures here under consideration were fabricated by the appellant and were not purchased by it; and no sales tax or use taxes were assessed on and with respect to the acquisition and use of such dies and fixtures, and, of course, no such taxes are included in the assessment complained of in this appeal. ’ ’
The appellant, the appellee and the Board of Tax Appeals all cite the decision of this court in the case of the Jackson Iron & Steel Co. v. Glander, Tax Commr., 154 Ohio St., 369, 96 N. E. (2d), 21. The appellant seeks to distinguish it while the appellee and the Board of Tax Appeals consider it controlling here. This court concurs in the latter view.
The single paragraph of the syllabus in the Jackson case, supra, reads as follows;
*363 “Sections 5546-1 and 5546-25, General Code [now Sections 5739.01 and 5741.01, Revised Code], except from taxation sales of articles where the purpose of the consumer is to use or consume the article transferred directly in the production of tangible personal property for sale by manufacturing, processing or mining. The purchase of machinery and equipment for use in mining coal, which coal is not sold but is used in the production of pig iron for sale, does not come within the exceptions of the above statutes.”
And in the opinion by Zimmerman, J., appears the following cogent rationale:
‘ ‘ By the language, employed in Sections 5546-1 and 5546-2, General Code, the obvious intent of the General Assembly was to impose an excise tax on every retail sale made in the state of Ohio of tangible personal property, with certain specified exceptions.
“Section 5546-1, General Code, relating to ‘sales,’ and Section 5546-25, General Code, relating to ‘usé,’ as they pertain to the instant case, except from taxation only those sales where the purpose of the consumer is to use or consume the thing transferred directly in the production of tangible personal property for' sale by manufacturing, processing, refining or mining.
“The precise question now before the court is whether machinery and equipment purchased for use in mining coal, which coal is not sold but is later used in the production of pig iron, are used directly in the production of tangible personal property, within the contemplation of the exceptions referred to above.
< l # # #
“To come within the exceptions from taxation imposed by the Sales and Dse Tax Acts, the sale must be of (1) items necessary and not merely facilitative to the actual business of producing tangible personal property which is to be sold, (2) items used for transporting articles where such transportation is a part of the processing of such articles and (3) items used or consumed during the actual manufacturing or processing.
“In other words, for the purchase of an item to be excepted *364 from taxation under the Sales Tax Act or the Use Tax Act the item must be indispensable to and directly connected with the actual manufacture or processing of the particular article to be sold.
“In the instant case, it can not fairly be said that the mining of coal is a direct and integral part of the production of . pig iron. Here, there are two distinct activities, namely, mining and smelting, and, although they are related in that mined coal is utilized in the production of pig iron, the two are still separate and distinct operations.
“It therefore follows that, since mining is not a part of the business of producing pig iron, the purchase of the mining machinery and equipment in issue is subject to taxation. To hold otherwise would be extending an exception to taxation by judicial fiat beyond the limits expressed and intended by the General Assembly in the existing legislation affecting the subject.”
A further contention of the appellant is that it is entitled to an exemption under the provisions of the Tax Commissioner’s Rule 39. However, there are at least two difficulties with this complaint. The first is that the Board of Tax Appeals found there was no necessary assignment of error raising this question. Secondly, the rule-making authority of the Tax Commissioner obviously does not permit him to amend or enlarge the controlling provisions of the statutes.
Restated and reduced to its lowest terms, the question before this court is whether the statutory sales and use tax exceptions are applicable to tools purchased and used for the manufacture of other tools which in turn are later used directly in the manufacture of automobile body panels to be sold by the appellant. The appellant asks this court to hold that since the manufactured tools are used directly in the manufacture of body panels the purchased tools likewise are used directly in the later manufacture of the body panels although the use of the purchased tools is limited to the earlier production of the manufactured tools. To so hold would constitute a disregard of the plain meaning of the word “directly” which the diction *365 aries define as “without the intervention of a medium or agent.” It would seem beyond cavil that the manufactured tools are an intervention between the purchased tools and the final body panels.
The decision of the Board of Tax Appeals is affirmed.

Decision affirmed.

Zimmerman, Tart, Matthias, Bell, Herbert and Peck, JJ., concur.